UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

BERNARD JACKSON;
GLORIA JACKSON,

                      Plaintiffs,

   -against-                              1:05-CV-0726
                                                  (LEK/DRH)
UNITED STATES OF AMERICA,

                      Defendant.
_____

## MEMORANDUM-DECISION AND ORDER[1]

### I. Background

The following is a summary of the pertinent facts.

Plaintiff Bernard Jackson and Plaintiff Gloria Jackson, husband and wife, bring this action against the Defendant United States of America ("Defendant") under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671 *et seq.*, alleging negligence and medical malpractice on the part of medical personnel associated with the Bath Veterans Administration Hospital in Bath, New York - under the United States Department of Veterans Affairs ("VA").  See Complaint (Dkt. No.1).

After a car accident in April 1999, Plaintiff Bernard Jackson, an honorably discharged former member of the United States Armed Forces, presented with an "unstable neck fracture of C1 on C2."  See Complaint (Dkt. No. 1) at ¶¶ 7, 12-13.  On June 21, 1999, Dr. Jodie Levitt, a surgeon at Robert Packer Hospital in Sayre, Pennsylvania, performed surgery, including "a high cervical fusion with autologous bone graft from the left posterior iliac crest."  Id. at ¶ 14-15.  Then, on June

---

[1] For printed publication by the Federal Reporters.

29, 1999, Plaintiff Bernard Jackson was transferred to the Bath VA Hospital for follow-up care, and he remained as an admitted patient there from June 29, 1999, until September 11, 1999. Id. at 16-17; B. Jackson Aff. (Dkt. No. 11, Attach. 2) at ¶ 4.

Plaintiff Bernard Jackson complained to VA hospital doctors, on several different occasions, of illness and discomfort, including, *inter alia*, weakness, dizziness, numbness in his left arm, headache and neck ache. Complaint (Dkt. No. 1) at ¶¶ 18-19, 23. X-rays taken July 30, 1999, showed "cervical changes at C1 and C2, and degenerative changes at C5-C6"; in September 1999 a nurse noted Plaintiff Bernard Jackson had been suffering numbness and coldness in his left hand; and evaluations by another VA doctor recommended therapy after finding arthritis, neuropathy and muscle weakness. Id. at ¶¶ 24-28.

Plaintiff was discharged on September 11, 1999, under an "irregular release" at the recommendation of a physician at the Bath VA hospital, because, *inter alia*, Plaintiff had been spending inordinate amounts of time off of the ward. Id. at ¶¶ 29-30. On October 5, 1999, Plaintiff was diagnosed as having an infection at the graft site/location of surgery (C1-C2 of the cervical spine). Id. at ¶ 31. Plaintiff claims, *inter alia*, that "as a result of the aforesaid negligence and medical malpractice, the plaintiff has been caused to suffer the condition of high cervical myelopathy due to subluxation of C1 on C2, and that condition will be permanent." Id. at ¶ 37. Plaintiff Bernard Jackson alleges that Dr. Levitt informed him that "the cervical myelopathy could have been avoided if [Plaintiff] was seen earlier during [Plaintiff's] admission to the Bath VA." B. Jackson Aff. (Dkt. No. 11, Attach. 2) at ¶ 5.

Plaintiff Bernard Jackson claims that, in the year 2000, he contacted the VA "to make a claim for compensation benefits for cervical myelopathy due to lack of treatment at the Bath VA. I

2

was subsequently given a form to file with the Bath VA for compensation benefits. I was never informed about the existence of the Federal Tort Claims Act. In 2000, I did not know what the Federal Tort Claims Act was. I also had no knowledge of the SF95 form." Id. at ¶ 6; see also id. at ¶ 9. Plaintiff filed his claim for benefits in September 2000, and received a response from the VA, dated October 16, 2000, acknowledging the claim and requesting additional information. Id. at ¶ 7; Plntf's Ex. (Dkt. No. 11, Attach. 3). Plaintiff claims that the VA has not paid him compensation benefits. See B. Jackson Aff. (Dkt. No. 11, Attach. 2) at ¶ 7.

In 2002, Plaintiffs met with the law firm of Rosenblum, Ronan, Kessler & Sarachan, LLP, in Albany, New York, at which time that firm informed Plaintiffs about the FTCA and SF95, and referred them to the law firm of O'Connor, O'Connor, Bresee & First, P.C., Plaintiff's present counsel. Id. at ¶ 8. After meeting with the O'Connor law firm, Plaintiff Bernard Jackson filed a SF95 form with the VA on August 15, 2002,[2] making a claim under the FTCA for malpractice, and seeking total damages of fifteen million dollars ($15,000,000.00). Id.; Plntf's Ex. (Dkt. No. 11, Attach. 4).[3] The VA considered Plaintiff Bernard Jackson's SF95 and FTCA claim, and rejected it as being untimely under the statute in a letter dated December 13, 2004. See Letter Decision from VA (Dkt. No. 10, Attach. 5). Plaintiffs thereafter filed this lawsuit.

Defendant has now filed a Motion (Dkt. No. 10) to dismiss this action pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, claiming that Plaintiffs'

---

[2] The Court notes that the VA's December 13, 2004 letter denying Plaintiff Bernard Jackson's claim asserts that the completed SF95 form was not received by the VA until September 11, 2002. See Letter Decision from VA (Dkt. No. 10, Attach. 5).

[3] There is no indication that the SF95 and FTCA claim submitted administratively to the VA included Plaintiff Gloria Jackson's current claim for $100,000.00.

3

failure to file the SF95 and FTCA claim administratively with the VA within the statutory two-year period has forever barred the claim, and has therefore also divested this Court of jurisdiction. Plaintiffs have filed a response opposing the Motion (Dkt. No. 11), and Defendant has filed a Reply (Dkt. No. 12). For the following reasons, Defendant's Motion is granted in part and denied in part.

## II. Discussion

*A. Standard of Law*

### 1. Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b) provides, in relevant part:

> **How Presented.** Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: (1) lack of jurisdiction over the subject matter....

FED. R. CIV. P. 12(b)(1).

Furthermore,

> [w]hen considering a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the Court may consider affidavits and other materials beyond the pleadings to resolve jurisdictional questions.... Under Rule 12(b)(1), the Court must accept as true all material factual allegations in the complaint, but will not draw inferences favorable to the party asserting jurisdiction.... The burden is on the plaintiff to both plead and prove compliance with the Federal Tort Claims Act statutory requirements.... Absent sufficient proof by the asserting party, the court lacks jurisdiction over the matter.

Narvaez v. United States, No. 05 CV 2240(SLT)(RML), 2007 WL 174141, at *2 (E.D.N.Y. Jan. 19, 2007) (citing Robinson v. Gov't of Malaysia, 269 F.3d 133, 141 n. 6 (2d Cir. 2001); Kamen v. AT & T Co., 791 F.2d 1006, 1011 (2d Cir. 1986); Shipping Fin. Servs. Corp. v. Drakos, 140 F.3d 129, 131 (2d Cir. 1998); In re Agent Orange Prod. Liab. Litig., 818 F.2d 210, 214 (2d Cir. 1987)).

"Thus, the standard used to evaluate a Rule 12(b)(1) claim is similar to that for summary judgment

under Fed.R.Civ.P. 56.... The plaintiff has the ultimate burden of proving the Court's jurisdiction by a preponderance of the evidence." James v. United States, No. 99 Civ. 4238 BSJ, 2000 WL 1132035, at *2 (S.D.N.Y. Aug. 8, 2000) (citing, *inter alia*, Kamen v. Am. Tel. & Tel. Co., 791 F.2d 1006, 1011 (2d Cir. 1986); Malik v. Meissner, 82 F.3d 560, 562 (2d Cir. 1996)).

### 2. Federal Tort Claims Act

"The exclusive remedy for torts committed by federal employees in the course of their duties is the [FTCA]..., 28 U.S.C. §§ 1346(b), 2671-80.  The Court has no subject matter jurisdiction over a tort claim unless the claimant has first timely exhausted his administrative remedies." James, 2000 WL 1132035, at *2.  The District Court in Narvaez also recently reiterated the standard of the law concerning claims under the FTCA, and the requirement for presentment:

> The [FTCA]... provides a limited waiver of the sovereign immunity of the United States for certain torts.... The FTCA waives the Government's sovereign immunity with respect to claims against the United States that seek money damages for personal injury "caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment."... Any suit under the FTCA must strictly comply with the terms and conditions of this waiver....
>
> The Supreme Court has held that the presentment requirement of 28 U.S.C. § 2675(a) is unambiguous.... Section 2675(a) provides, in relevant part: "An action shall not be instituted upon a claim against the United States for money damages for injury... unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail."... The presentment requirement of § 2675 "must be satisfied to obtain jurisdiction to sue the United States."...
>
> As courts have observed, § 2675 was enacted with the goal of settling tort claims by requiring that claims be presented to the appropriate agency before suit is brought.... Congress did not define presentment, but Courts have held that a claim meets the presentment requirements of § 2675(a) when the claim is specific enough to serve the purposes intended by Congress in enacting § 2675(a).... A claim "must provide enough information to permit the agency to conduct an investigation and to estimate the claim's worth."

Narvaez, 2007 WL 174141, at *3 (citing Fisko v. United States Gen. Serv. Admin., 395 F. Supp. 2d 57, 61 (S.D.N.Y. 2005) (quoting United States v. Mitchell, 445 U.S. 535, 538 (1980)); Johnson v. Smithsonian Inst., 189 F.3d 180, 189 (2d Cir. 1999); McNeil v. United States, 508 U.S. 106, 111 (1993); Romulus v. United States, 983 F. Supp. 336, 338 (E.D.N.Y. 1997), aff'd, 160 F.3d 131 (2d Cir. 1998); 28 U.S.C. §§ 1346(b), 2675(a)).

### B.  Defendant United States' Motion to Dismiss

This Court first notes the provisions of 38 C.F.R. § 14.604. That Section provides, in relevant part:

> (a) Each person who inquires as to the procedure for filing a claim against the United States, predicated on a negligent or wrongful act or omission of an employee of the Department of Veterans Affairs acting within the scope of his or her employment, will be furnished a copy of SF 95, Claim for Damage, Injury, or Death. The claimant will be advised to submit the executed claim directly to the Regional Counsel having jurisdiction of the area wherein the occurrence complained of took place. He or she will also be advised to submit the information prescribed by 28 CFR 14.4 to the extent applicable....
>
> (b) A claim shall be deemed to have been presented when the Department of Veterans Affairs receives from a claimant, his or her duly authorized agent or legal representative, an executed SF 95, or other written notification of an incident, together with a claim for money damages, in a sum certain, for damage to or loss of property or personal injury or death: Provided, however, That before compromising or settling any claim, an executed SF 95 shall be obtained from the claimant.

38 C.F.R. § 14.604(a), (b).

The facts of the case at bar are very similar to that of James, 2000 WL 1132035. And, as District Judge Jones stated in James: "I do not read § 14.604(a) to require plaintiff to utter any magic words when alerting the VA to his claims. Such an overly technical application of the regulation would defeat its very purpose, which is to ensure that a non-lawyer such as the plaintiff is informed, when appropriate, of timing and filing requirements for claims against the VA." Id. at *3.

This Court agrees that claimants finding themselves in the same position as Plaintiff Bernard Jackson should not be required to recite some special incantation prior to being informed of the proper procedure for seeking relief pursuant to the statutes and regulations. Indeed, there should be no shibboleth to identify FTCA claimants in cases like the one at bar. See Glarner, 30 F.3d at 702 ("Proceeding pro se, [Plaintiff] wrongly assumed that he had filed the appropriate claims, but 38 C.F.R. § 14.604(a) mandates that veterans not remain so uninformed.").

Additionally, Plaintiffs argue that this Court should find equitable tolling of time, such that the FTCA claim would be timely under the statute, and this Court would have jurisdiction over this matter. See Plntf's Mem. of Law (Dkt. No. 11, Attach. 5). In Glarner v. United States, 30 F.3d 697 (6th Cir. 1994), the Sixth Circuit addressed the issue of equitable tolling, and the duty of the VA to inform potential claimants of the claims procedure. And, the Glarner Court provided five factors to consider when addressing equitable tolling. "The factors that this court considers in deciding whether to apply the doctrine of equitable tolling are (1) lack of actual notice of the filing requirement; (2) lack of constructive knowledge of the filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the defendant; and (5) a plaintiff's reasonableness in remaining ignorant of the notice requirement." Id. at 702 (citing Andrews v. Orr, 851 F.2d 146, 151 (6th Cir. 1988)).

Accordingly, this Court finds that the statute was equitably tolled **starting** at the time when the VA failed to inform Plaintiff of the proper procedure and failed to provide the proper (SF95) form - when it sent Plaintiff the **October 16, 2000** request for further information for his benefits claim. See B. Jackson Aff. (Dkt. No. 11, Attach. 2) at ¶ 7; Plntf's Ex. (Dkt. No. 11, Attach. 3). Said tolling continued **until** Plaintiff learned about or was informed about the proper procedure - the

date Plaintiff met with the attorneys at Rosenblum, Ronan, Kessler & Sarachan, LLP - a time this Court places as **January 2002**.[4]  Thus, Plaintiff's claim was timely presented in the administrative process.  Furthermore, the VA considered and rejected the belated claim in the letter dated December 13, 2004 (more than 2 years after the August 15, 2002, filing) - see Letter Decision from VA (Dkt. No. 10, Attach. 5) - thereby removing any prejudice Defendant might face from a lack of knowledge of the claims, a lack of opportunity to investigate, or any other such prejudice.[5]  See, generally, James, 2000 WL 1132035, at *4.

Upon due consideration of the above, including the factors discussed by the Glarner Court, and finding that Plaintiff Bernard Jackson had neither actual nor constructive knowledge of the filing requirement (until meeting with the Rosenblum law firm), and Plaintiff's ignorance of same was reasonable given the duty of the VA to inform him - and the VA's subsequent failure to so notify - and considering that Plaintiff was diligent in prosecuting his claim and rights, and Defendant faces no prejudice, the Court holds that Defendant's Motion to dismiss is denied in part as to Plaintiff Bernard Jackson's claim.

However, Defendant's Motion to dismiss is granted in part as to Plaintiff Gloria Jackson's

---

[4] The Rosenblum law firm informed Plaintiff about the FTCA, thereby providing him with notice.  See B. Jackson Aff. (Dkt. No. 11, Attach. 2) at ¶ 8.  Thus, the tolling ends with that meeting.  However, Bernard Jackson's affidavit states that the meeting with the Rosenblum law firm took place "in 2002", with Plaintiff failing to provide a specific date.  Id.  This Court will not presume to guess as to the date of said meeting and provision of information.  Instead, for purposes of this Decision and Order, this Court will consider the meeting to have taken place at the beginning of 2002 - in January 2002.  As such, with the equitable tolling of time running from October 16, 2000 until January 2002, and given that Plaintiff filed the SF95 and FTCA claim on August 15, 2002 (see id. at ¶ 8), Plaintiff's SF95 and FTCA claim are timely after the tolling.

[5] In fact, the VA's letter denying the claim states, in pertinent part: "[w]e have *carefully reviewed* and *thoroughly investigated* this matter...."  Letter Decision from VA (Dkt. No. 10, Attach. 5) (emphasis added).

8

claim for $100,000.00. In reviewing Plaintiff's SF95 claim form, the total claim presented to the VA was fifteen million dollars ($15,000,000.00). According to the Complaint (Dkt. No. 1), the $15,000,000.00 claim is Bernard Jackson's claim for damages in this case. Gloria Jackson seeks an additional $100,000.00. But, that claim was not presented in the administrative process, and thus that claim has not been exhausted. Furthermore, in this matter the SF95 stated a claim Total of $15,000,000.00. See Deft's Ex. (Dkt. No. 10, Attach. 5). Therefore, as other Courts have held, so this Court holds that Plaintiffs' eventual recovery, if any, is limited to that amount administratively claimed and presented. See Kokaras v. United States, 980 F.2d 20, 22-23 (1st Cir. 1992); Sciolino v. United States, No. 98-CV-0450E(M), 2001 WL 266024, at *4 (W.D.N.Y. Mar. 15, 2001) ("because section 2675(b) of the FTCA states that '[a]n action under this section shall not be instituted for any sum in excess of the amount of the claim presented to the Federal agency...' and plaintiff only claimed a total of $5,000,000 in her SF-95 administrative claim, she, individually and on behalf of [her husband], is limited to a maximum aggregate recovery of $5,000,000."); Willie v. United States, 92-CV-1143, 1993 WL 184149, at *5-*7 (N.D.N.Y. May 26, 1993) (McAvoy, C.J.) ("It is settled that where a claimant fails to specifically state an amount of damages for a loss of consortium claim, an indispensable prerequisite under the regulations is lacking and the court is therefore deprived of subject matter jurisdiction to entertain that claim.... [P]laintiffs' Original Claim contained only one monetary figure, presumably for personal injuries sustained by Cecil Willie, the claimant involved in the accident. No separate sum certain was listed for Victoria's derivative claim. As such, it cannot be said the Government was placed on sufficient notice of the amount of her claim and the jurisdictional requirements are therefore not satisfied. Victoria Willie's loss of consortium claim is therefore dismissed.").

Therefore, this Court lacks subject matter jurisdiction over Plaintiff Gloria Jackson's accompanying $100,000.00 claim, and that claim is dismissed.

### III.  Conclusion

Based on the foregoing discussion, it is hereby

**ORDERED**, that Defendant's Motion to dismiss (Dkt. No. 10) is **DENIED IN PART** as to Plaintiff Bernard Jackson's claims, and **GRANTED IN PART** as to Plaintiff Gloria Jackson's claims, as discussed above; and it is further

**ORDERED**, that the Clerk serve a copy of this Order on all parties.

**IT IS SO ORDERED**.

DATED:      February 05, 2007
            Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge